IN THE UNITED STATED DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ABRAHAM YASIN,               )
                             )
        Plaintiff,           )
                             )   Case No. 07 C 1266
    v.                       )
                             )
COOK COUNTY SHERIFF'S        )
DEPARTMENT et al.,           )
                             )
        Defendants.          )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On January 16, 2009, Plaintiff Abraham Yasin filed a two-count Second Amended Complaint against Defendants Cook County Sheriff's Department of Corrections, the Sheriff of Cook County Thomas Dart, and the Cook County Sheriff's Office – all municipal entities of Cook County – alleging a Title VII hostile work environment claim based on his national origin and a hostile work environment claim pursuant to 42 U.S.C. § 1981 based on his ancestry.[1] Before the Court is Sheriff Dart's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the Court denies Defendant's motion.

## BACKGROUND

### I. Northern District of Illinois Local Rule 56.1

When determining summary judgment motions, the Court derives the background facts

---

[1] The Supreme Court has defined the term "race" under Section 1981 "broadly to include identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *See Pourghoraishi v. Flying J, Inc.,* 449 F.3d 751, 756 (7th Cir. 2006) (citation omitted).

from the parties' Local Rule 56.1 statements. Specifically, Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Ammons v. Aramark Uniform Servs., Inc.,* 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the nonmoving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.,* 403 F.3d 940, 944 (7th Cir. 2005). In addition, Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that require the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008).

The purpose of Rule 56.1 statements is to identify the relevant evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006). The requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon,* 233 F.3d at 528. Moreover, the Court may disregard statements and responses that do not properly cite to the record. *See Cichon v. Exelon Generation Co., L.L.C.* 401 F.3d 803, 809-10 (7th Cir. 2005); *see also Raymond v. Ameritech Corp.*, 442 F.3d 600, 604 (7th Cir. 2006) ("district courts are entitled to expect strict compliance with Local Rule 56.1"). Finally, "hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial." *Eisenstadt v. Centel Corp.,* 113 F.3d 738, 742 (7th Cir. 1997); *see, e.g.,*

*Keri v. Board of Tr. of Purdue Univ.,* 458 F.3d 620, 630 (7th Cir. 2006). With these standards in mind, the Court turns to the relevant facts of this case.

## II. Relevant Facts

Defendant, Thomas Dart, is the Sheriff of Cook County and has served in that capacity at all relevant times to this lawsuit. (R. 102-1, Def.'s Rule 56.1 Stmt. Facts ¶ 1.) In November 2003, the Cook County Sheriff's Department hired Plaintiff Abraham Yasin as a correctional officer. (*Id.* ¶ 2.) Yasin is a Muslim male of Middle-Eastern origin and Arab ancestry. (R. 95-1, Second Am. Compl. ¶ 2.) Initially, Yasin was assigned to Division 9 at the Cook County Department of Corrections ("CCDOC") for approximately one year. (Def.'s Stmt. Facts ¶ 4.) After that, Yasin worked in Division 10 where the alleged incidents occurred. (*Id.*; R. 105-1, Pl.'s Rule 56.1 Stmt. Add'l Facts. ¶ 92.) Superintendent Katie Harrison supervised Division 10 from approximately January 2005 to March 2005. (Pl.'s Stmt. Facts ¶ 92; Def.'s Stmt. Facts ¶ 37.)

Starting in December 2004, Yasin began to receive calls on the telephones and over the radios at work that included co-workers calling him names like terrorist, camel jockey, and shoe bomber. (Pl.'s Stmt. Facts ¶ 80.) In addition, on January 14, 2005, an article from the Sun-Times newspaper regarding terrorism in America was pasted on Yasin's work locker. (*Id.* ¶ 88; Def.'s Stmt. Facts ¶ 6.) Yasin notified an investigator from Internal Affairs Division ("IAD") about the article, who removed the clipping from Yasin's locker and told him that IAD would investigate the incident. (Def.'s Stmt. Facts ¶ 6.) Meanwhile, on January 21, 2005, a correctional officer called Yasin on the radio and when Yasin did not respond, somebody stated that "he's making a bomb." (*Id.* ¶ 7.)

On January 25, 2005, Yasin had a meeting with Superintendent Harrison and told her that individuals were harassing him in the locker room; that pictures were placed on his locker; that individuals made remarks about him over the radio, such as "Arab," "he's making a bomb," and "bin Laden;" and that people yelled out "camel jockey" or "camel" when he was around. (*Id.* ¶¶ 8; 12; Pl.'s Stmt. Facts ¶ 90.) Yasin told Superintendent Harrison that he felt threatened by this conduct and that he did not like what his co-workers were doing to him. (Pl.'s Stmt. Facts ¶ 90.) According to Superintendent Harrison, she filled out an incident report and forwarded it to the Executive Director's Office and IAD. (*Id.*) At her deposition, Superintendent Harrison testified that IAD did not contact her about Yasin's harassment allegations and that she did not discuss these allegations with anyone in IAD. (*Id.* ¶ 113.)

After Superintendent Harrison left Division 10 – sometime in February or March 2005 – the remarks resumed. (*Id.* ¶ 92.) Specifically, on February 24, 2005, someone yelled out "sand nigga" in the correctional officers' locker room. (Def.'s Stmt. Facts ¶ 9.) Thereafter, the comment "Arab" was made over the radio about ten times over the period of a year. (*Id.* ¶¶ 10, 11.) On August 29, 2005, Yasin overheard a conversation in the locker room about the shoe bomber and then heard someone say, "Yasin's got bombs in his shoes." (*Id.* ¶ 13.) On September 10, 2005, Yasin reported the shoe bomber remark to a Division 10 supervisor. (*Id.* ¶ 15.) On October 22, 2005, Yasin saw the words "sand nigga" written in ink on his locker. (*Id.* ¶ 16.) Other correctional officers also called Yasin "Hussein," a comment that Yasin reported to his supervisor. (Pl.'s Stmt. Facts ¶ 84.) In a letter addressed to Undersheriff Zelda Whittler, Yasin specified that correctional officers in the locker room had stated "sand nigga" and "camel jockey" in his presence during February 2005 and June 2005. (*Id.* ¶ 83; Def.'s Stmt. Facts ¶ 9.)

On September 10, 2005, correctional officers in the locker room were talking about hog-tying Muslims in Iraq in front of Yasin. (Pl.'s Stmt. Facts ¶ 94.) Yasin reported this incident to Lieutenant Martinez. (*Id*.) Yasin also saw "Yasin bin Laden" written on one of the bathroom stalls in the men's locker room and complained to Captain Frank Arce about this graffiti and wrote a memorandum to IAD about this incident. (*Id*. ¶ 95; Def.'s Stmt. Facts ¶ 17.) Officer Ronald Wade also witnessed the graffiti on Yasin's locker and the bathroom stall and was unaware of any action taken by the supervisors of Division 10 in response to the graffiti. (*Id.*) In addition, Officer Charles Mickiel saw "sand nigger" written on Yasin's locker about three times. (*Id.*)

In October 2005, Yasin wrote a memorandum to IAD indicating that the alleged harassment was ongoing and asked IAD to look into the matter. (*Id.* ¶ 98.) Yasin also complained to Sergeant Helms about his co-workers' conduct on numerous occasions in 2005. (*Id.* ¶ 100.) Evidence in the record reveals that Yasin started filing incident reports with IAD in January 2005, including a complaint to IAD's Chief Timothy Kaufman. (*Id.* ¶ 106.) In addition, Yasin filled out an incident report each time he met with a supervisor in Division 10. (*Id.* ¶ 109.)

After taking medical leave in March 2006, Yasin returned to work at Division 10 in February 2007. (*Id*.; Def.'s Stmt. Facts ¶ 32.) Upon returning to work, an IAD investigator, Dennis Mulcahy, initiated an investigation into Yasin's allegations in March 2007. (Pl.'s Stmt. Facts ¶ 109.) Yasin provided Mulcahy with his datebook and diary in which he had recorded the alleged incidents of harassment. (*Id*. ¶ 110.) In addition, Officer Franks advised Mulcahy that he remembered hearing rumors that people were making inappropriate comments about Yasin's national origin. (*Id.* ¶ 114.) Officer Rubio also told Mulcahy that he heard rumors about

5

harassment that Yasin suffered prior to July 11, 2005. (*Id.*) Meanwhile, Mulcahy did not interview Officers Wade or Mickiel – who could both identify incidences of harassment directed at Yasin. (*Id.* ¶ 113.) Specifically, Officer Mickiel testified that he heard the terms "sand nigger" and "camel jock" made over the radio for more than a year. (*Id.* ¶ 86.) Nevertheless, the "thrust" of Mulcahy's investigation concerned Yasin's complaint about an inmate attack in which staff personnel responded slowly to an "all available" call. (*Id.* ¶ 111.; Ex. G, Mulcahy Dep., at 22-23.)

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Estate of Suskovich v. Anthem Health Plans of Va., Inc.,* 553 F.3d 559, 563 (7th Cir. 2009) (quoting Fed. R. Civ. P 56(c)). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted); *see also* Fed.R.Civ.P. 56(e)(2) (requiring adverse

party to "set out specific facts"). At summary judgment, the "court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *National Athletic Sportswear, Inc. v. Westfield Ins. Co.,* 528 F.3d 508, 512 (7th Cir. 2008).

## ANALYSIS

Courts analyze Title VII and Section 1981 hostile work environment claims under the same standard. *See Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 403 (7th Cir. 2007); *Herron v. DaimlerChrysler Corp.,* 388 F.3d 293, 299 (7th Cir. 2004). More specifically, to survive summary judgment on a hostile work environment claim based on national origin or ancestry, Yasin must establish that: (1) he was subjected to unwelcome harassment, (2) the harassment was based on his national origin or ancestry; (3) the harassment was severe or pervasive enough to alter the conditions of his employment and create a hostile and abusive work environment, and (4) there is a basis for employer liability. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Andonissamy v. Hewlett-Packard Co.,* 547 F.3d 841, 847 (7th Cir. 2008).

### I.  Severe or Pervasive Harassment

Defendant does not argue that Yasin has failed to establish the first two elements of his hostile work environment claim. Instead, Defendant focuses on the third element, namely, that Yasin has failed to establish that the alleged conduct was severe or pervasive enough to alter the conditions of his employment and create a hostile and abusive work environment. *See Harris,* 510 U.S. at 21. This element has both subjective and objective components, *see Lapka v. Chertoff,* 517 F.3d 974, 983 (7th Cir. 2008), although Defendant does not make any arguments

7

concerning the subjective component. *See Steen v. Myers,* 486 F.3d 1017, 1020 (7th Cir. 2007) (absence of discussion in briefs amounts to abandonment of argument). Under the objective component, Yasin "must prove that a reasonable person would find the alleged harassment to be so severe or pervasive as to create a hostile work environment, thus affecting the terms and conditions of employment." *Henry v. Milwaukee County,* 539 F.3d 573, 586 (7th Cir. 2008); *see also Lloyd v. Swifty Transp., Inc.,* 552 F.3d 594, 603 (7th Cir. 2009). "Courts examine a variety of factors when evaluating whether a workplace is hostile, including the frequency of the supposed discriminatory conduct; the severity of it; whether the conduct is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with an employee's job performance." *Andonissamy,* 547 F.3d at 847. In short, "[w]hether an employer's conduct creates a hostile work environment is not subject to 'a mathematically precise test' and 'can be determined only by looking at all the circumstances.'" *Atanus v. Perry,* 520 F.3d 662, 676 (7th Cir. 2008).

Viewing the evidence and all reasonable inferences in Yasin's favor – as the Court is required to do at this procedural posture – he has presented evidence raising a genuine issue of material fact for trial that his co-workers' conduct was severe or pervasive enough to alter the conditions of his employment and create a hostile and abusive work environment. *See Lapka,* 517 F.3d at 983 ("the phrase 'severe or pervasive' is disjunctive"). Specifically, evidence in the record shows that Yasin's co-workers made ongoing remarks – as well as postings and graffiti – about his ancestry and national origin at least a hundred times for over a one-year period. *See Shanoff v. Illinois Dep't. of Human Servs.,* 258 F.3d 696, 704 (7th Cir. 2001) ("repeated incidents of verbal harassment that continue despite the employee's objections are indicative of a

8

hostile environment."). In fact, Yasin testified that his co-workers made calls over the radio and telephone about his ancestry and national origin as many as ten times a day. (*Id.* ¶ 80.) The incessant remarks targeting Yasin – such as "terrorist," "Hussein," "sand nigger," "bin Laden," "shoe bomber," and "camel jockey" – were discriminatory, insulting, and humiliating. *See Harris,* 510 U.S. at 21. Moreover, Yasin's co-workers posted articles about terrorism in America on his locker, as well as a picture of a camel, and made remarks to Yasin that he should "go back to his country" and "get out of America." (*Id.* ¶¶ 80, 88, 89.) In sum, Yasin has raised an issue of fact that this conduct was more than merely objectionable. *See Kampmier v. Emeritus Corp.,* 472 F.3d 930, 941 (7th Cir. 2007).

Yasin has also presented evidence creating an issue of fact for trial that the alleged harassment interfered with his work performance. Specifically, Yasin requested and obtained days off from work during the relevant time period based on the harassing conduct. (*Id.* ¶ 101.) There is also evidence in the record that Yasin felt threatened by this co-workers' conduct and that he did not like what his co-workers were doing to him. (*Id.* ¶ 90.) Furthermore, Yasin asked to be transferred from Division 10 at least two times. (*Id.* ¶ 118.) In response to one of his transfer requests – in which Yasin explained the harassing conduct – a personnel department employee told Yasin that if he could not handle it, he should quit and take a civilian job. (*Id.*)

Examining all of the circumstances in a light most favorable to Yasin – including the frequency and severity of the conduct and its interference with Yasin's work performance – Yasin has presented evidence creating an issue of fact for trial that a reasonable person would find the alleged harassment pervasive or severe enough to create a hostile and abusive work environment. *See Harris*, 510 U.S. at 23; *Andonissamy*, 547 F.3d at 847. In sum, the Court

would be hard-pressed to conclude, as a matter of law, that the correctional officers' conduct did not create a hostile work environment based on Yasin's national origin and ancestry.[2] *See* Fed. R. Civ. P 56(c).

## II. Employer Liability

Next, Defendant argues that Yasin has not presented evidence fulfilling the fourth element of a hostile work environment claim, namely, that there is a basis for employer liability. As the Seventh Circuit instructs, "[a]n employer can be vicariously liable for a hostile work environment created by a supervisor, but is only liable for a hostile work environment created by a co-worker if the employer was negligent in discovering or remedying the harassment." *Andonissamy,* 547 F.3d at 848. Because Yasin presents evidence creating a genuine issue of material fact for trial that his co-workers created a hostile work environment, the Court must determine whether the Sheriff's Office was negligent in discovering or remedying the alleged harassment. *See Lapka,* 517 F.3d at 984 ("theory of co-worker liability [] is basically a theory of supervisory negligence"). Under this standard, an "employer can avoid liability for its employees' harassment if it takes prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring." *Cerros v. Steel Tech., Inc.,* 398 F.3d 944, 954 (7th Cir. 2005) (citation omitted). "The emphasis is on the prevention of future harassment." *Lapka,* 517 F.3d at 984.

---

[2] Relying on *Lucas v. Chicago Transit Authority,* 367 F.3d 714, 725-26 (7th Cir. 2004), Defendant argues that Yasin has failed to provide enough details concerning the harassing conduct to meet his evidentiary burden at summary judgment. *See* Fed.R.Civ.P. 56(e)(2). Although Yasin cannot remember all of the details of every harassing incident, Yasin has provided enough details of his co-workers' conduct to survive summary judgment – unlike the plaintiff in *Lucas* who only made conclusory statements not grounded in fact. *See id.* at 725-26.

Here, the parties do not dispute that Defendant was aware of Yasin's numerous allegations regarding the inappropriate comments and activities at Division 10 of the Cook County Department of Corrections. (*See* R. 104-1, Def.'s Mem., at 11-15; R. 110-1, Def.'s Reply Mem., at 4.) Furthermore, Yasin acknowledges that Superintendent Harrison took action to address the harassment that he suffered while she supervised Division 10 from January 2005 until approximately March 2005. Instead, Yasin focuses on the conduct occurring after February 2005 until March 2006, in which his co-workers subjected him to derogatory remarks, graffiti, and postings on a frequent basis. (Def.'s Stmt. Facts ¶¶ 9, 12, 13, 16; Pl.'s Stmt. Facts ¶¶ 94-98.) During that time period, Yasin advised supervisors in Division 10 of the phone calls and locker room comments. (Def.'s Stmt. Facts ¶¶ 18, 25, 27, 28; Pl.'s Stmt. Facts ¶ 94.) Indeed, evidence in the record reveals that Yasin filled out an IAD incident report of the harassing conduct each time he met with a supervisor in Division 10. (Pl.'s Stmt. Facts ¶ 109.) In addition, on October 22, 2005, Yasin wrote a memorandum to IAD about the graffiti on his locker saying "sand nigga" and the graffiti in the bathroom stating "Yasin Bin Ladin," as well as notifying two supervisors about this graffiti. (Def.'s Stmt. Facts ¶ 22.)

IAD did not address Yasin's complaints – that started as early as January 2005 – until he returned from medical leave in February 2007, although General Order 4.1 requires that a complete and expeditious investigation must take place if an employee complains about employment discrimination at the CCDOC. (Pl.'s Stmt. Facts ¶¶ 102-104.) Simply put, taking well over a year to address Yasin's harassment complaints is not a "prompt" or "expeditious" reaction to his complaints, especially in light of the numerous times Yasin complained to his supervisors and IAD. *See Cerros,* 398 F.3d at 954 (prompt investigation is the "hallmark of

reasonable corrective action."). Moreover, Investigator Mulcahy's investigation did not focus on Yasin's complaints of harassment, but mainly concerned Yasin's complaint about an inmate attack in which staff personnel responded slowly to an "all available" call. Based on these circumstances, Yasin has raised an issue of fact for trial whether the Sheriff's Office took an "appropriate corrective action [that is] reasonably likely to prevent the harassment from recurring." *See id.*

As such, construing the evidence and all reasonable inferences in Yasin's favor, he has presented evidence creating a genuine issue of fact for trial concerning the fourth element of his hostile work environment claim pertaining to Defendant's liability. Accordingly, the Court denies Defendant's summary judgment motion.

**III.    Monell Claim**

In a footnote in his response brief, Yasin argues that Defendant has waived any argument under *Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *See United States v. White,* 879 F.2d 1509, 1513 (7th Cir. 1989) (arguments raised in footnotes are waived). In his reply brief, the Sheriff briefly argues that Yasin has failed to present evidence in support of his Section 1981 claim that satisfy the requirements under *Monell*. *See Smith v. Chicago Sch. Reform Bd. of Tr.,* 165 F.3d 1142, 1148 (7th Cir. 1999) ("recovery against a governmental body under § 1981 may not be based on respondeat superior"); *see also Cornucopia Inst. v. USDA,* 560 F.3d 673, 677 (7th Cir. 2009) (arguments made for the first time in a reply brief are waived). Because the parties did not properly present their *Monell* arguments in their summary judgment memoranda, the Court will not consider these arguments at this time.

## **CONCLUSION**

For these reasons, the Court denies Defendant's Summary Judgment Motion pursuant to Federal Rule of Civil Procedure 56.

**Dated:** May 4, 2009

**ENTERED**

_____
**AMY J. STUEVE**
**United States District Court Judge**